May it please the Court, I'm Donald Kilmer for the Plaintiff Appellants in this matter. This is a Second Amendment case because the City has made it one. We wouldn't be here if we were talking about returning my client's car, or a family Bible, or a bicycle that had come into the possession of the City of San Jose. Nor are there any jurisdictional defects. She's not complaining about a wrong committed against her in a discreet time where she was damaged or wronged. The City of San Jose's supplemental brief on the Rooker-Feldman issues didn't even cite the 6th District Court of Appeals opinion that basically said, with that said, we believe that the record on appeal, this is the 6th District Court of Appeal, that the procedure provided under Section 33850 for the return of the firearms in possession of law enforcement remains available to Lori. Lori complied with that. She complied with the administrative procedure. She tendered the releases, the transfers, the transmutations of the firearms to the City of San Jose after the State Court case was over, after the Court of Appeals said this was her proper remedy. The City refused to comply. It's not Rooker-Feldman because she's here trying to enforce a State Court judgment, and it's not a... Well, she's not really enforcing a judgment. She's inferred something from the Court's decision, but the Court decision didn't say turn the guns back. No, it didn't, but this Court is bound by decisions made by State Courts of Appeal. Well, we're not usually in the business of enforcing State Court judgments. That's what the State Court's for. That's true. So your remedy seems to be in State court, not here, for enforcing a State court judgment, if that's really what you're doing. Of course, that's not really what you're doing. You're trying to draw bits and pieces from a State court decision, but it doesn't say in the end, give back the guns. So we're not really enforcing a State court judgment, are we? You know, Your Honor, the Rooker-Feldman doctrine doesn't kick a... Well, I'm not really trying to talk about Rooker-Feldman there. I'm trying to say I'm not sure why we're here to, quote, enforce a State court judgment, close quote. I don't think we are. There's no State court judgment that says what you're inferring. We have a Court of Appeals decision from the 6th DCA that specifically says that Laurie, once she completes the transfer process so that the guns are her sole and separate property and not the community property of her and her husband, has this remedy available under the California statute available to her. And why is that being brought here? Well, it's being brought here because my clients and I talked about whether or not we want judges who have life tenure making decisions that are controversial like this, because State court judges don't give us the remedies we want. So you're telling us now that you are appealing the State court, asking us to enforce a State court judgment? We don't take issue with what the 6th District Court of Appeal told us to do, because that's what we wanted to do all along. We can disagree with how the State court reached its decision in both the Court of Appeal and the trial court. Fact is, is that Laurie actually then complied with what the Court of Appeal told her to do. Instead of going to court, she followed up. And what if State law says that once she meets those requirements, the city must give her the guns rather than just may give her the guns? Well, it's broader than that, Your Honor. Once the guns are solely her property and not hers and her husband's, and her husband's, for purpose of this case, is a prohibited person. And 8102 is a statute that addresses firearms owned by the prohibited person. Now the guns only belong to Laurie. She has been cleared by the California Department of Justice to have them returned to her. She has transmuted the properties under California's law. She is eligible under California and federal law to own guns. She has the State-approved gun safe to store the guns in. She could comply with the statute that was passed by the State legislature while this case was pending to deny her husband access to them. The fact that she chose to go to federal court to enforce what the Sixth District Court of Appeal told her to do was a choice of hers. It was her choice of forum. But so she has tried to use this remedy. They said there's a remedy. She tried to use it. But what in any law, State or federal, tells us that she has to get the guns back rather than just she's eligible to be considered to get the guns back? The Second Amendment. Okay. So let's talk about that. And that's the reason you're here in federal court. Sure. The State claim, this argument that you're enforcing a State court judgment, if that's all you were doing, there wouldn't be Federal jurisdiction. You're here because of the Federal claims. No, we're here because the State wants to turn this or the city of San Jose wants to turn this into a gun case. Well, wait a minute. You're the one that filed in Federal court, right? And what's the jurisdiction for filing in Federal court? If you don't have a Federal claim in there, you don't belong here. I've got a Federal claim under the Second Amendment. We have a Federal claim under the Fifth Amendment. We have a Federal claim under procedural due process. So your client has made this a constitutional case. That's correct. The State claim is here presumably by supplemental jurisdiction. That's correct, Your Honor. Okay. And also as part of the procedural due process claim. The Court of Appeal in the 6th District said, your remedy is not going back to 8102 hearing. There's no jurisdiction if you own the guns. The court has no jurisdiction over you because you haven't been declared mentally incompetent or mentally compromised. In fact, once that transfer happened, once the administrative procedures were complied with and the California Department of Justice authorized the return of the firearms, checked Lori Rodriguez out, she's an eligible person, she has passed the gun safety test, she has a gun safe, the guns all now belong to her, that should have been the end of it. The City of San Jose continued to say no. But that doesn't give you Federal jurisdiction. It doesn't. If you're simply pursuing your California, what you allege are California statutory remedies, there's no Federal jurisdiction for that.  But guns are constitutional artifacts under the Second Amendment. I guess, so we come back to the proposition I offered up before. Yes, Your Honor. That issue comes up, if at all, as supplemental jurisdiction. It's the constitutional claim that puts you in Federal court. So it's not simply a matter of the City of San Jose making this a gun case. You're in Federal court only because you're asserting constitutional claims. That's correct, Your Honor. Okay. And to the extent you're here because of a Second Amendment claim, didn't the state court decide that Lori did not have a Second Amendment right that gave her these guns? I don't know that the court made that call, Your Honor. I think the court was more concerned with the fact that her husband, who was a prohibited person, still had the right to exercise demean and control over those guns as community property. Both the trial court, as we said in our supplemental brief, had some concerns over the fact that these were community property. He talked about the respondent, which was Lori's husband. Lori, in that case, was the intervener. The Court of Appeal in the 6th DCA also had those same concerns. And then it resurrected her ability to get those firearms back by saying, you don't belong in court. You belong in the administrative procedures that the state legislature has promulgated for resolving the return of firearms. We don't need to be in court because the state has foreseen how to take care of this. What are the things that happened? Well, the Court of Appeal did make explicit reference to the Second Amendment and to the Supreme Court's decisions in Heller and McDonald and seemed to me to reject the claim by saying the Second Amendment right doesn't extend to a claim to a particular firearm to be brought into a household where they had been confiscated previously because of the presence of a mentally ill person. So I'm not sure I can understand the argument that says the Court of Appeals didn't deal with or render a decision based on the Second Amendment. It clearly talked about it. It may have talked about it, but I think it was rendering its decision on the basis of the fact that Well, if your argument had been correct, the bottom line wouldn't have been what it was, would it? If the Court of Appeal had concluded that your client had a Second Amendment right to get the guns back, the bottom line would not have said affirmed. It would have said reversed or amended with instructions. And so I just don't see how you can say the Second Amendment issue wasn't passed upon by the Court of Appeal. Well, even if the Second Amendment is a close call, Your Honor, the procedure No, no, no, no. That's not what I'm proposing. I think the Court of Appeal rendered a decision with regard to your Second Amendment argument. It may have been wrong, but it rendered a decision. And if it did, why doesn't that preclude the claim from being repeated here? Because the Second Amendment arose again after Lori completed the administrative procedures that the Court of Appeal told her to do. Now the guns belong solely to her. They belong only to her. Well, at least one of the guns belonged solely to her to begin with. That's true. And the Court didn't change its decision and treat that gun differently. It didn't even address the issue, Your Honor. But it passed on it. Well, it did. It talked about the Second Amendment and ruled against her. What doesn't make sense in this case, Your Honor, is that the Court of Appeal and both the trial court as well and the district court in this case want to promulgate some idea that Lori cannot have a Smith & Wesson that has serial number 123 on it, but she can have a Smith & Wesson that says 456 on it. You disagree with that, but you could have gone to the California Supreme Court or to the U.S. Supreme Court to make that argument on appeal from a court that ruled against you on that point. We could not have gone to the California Supreme Court, Your Honor. We have to show prejudice in state court. There was no prejudice based upon the DCA's language that we believe that on the record that the plaintiffs ---- Of course you were prejudiced. The Court of Appeals had affirmed. It didn't say your client gets her gun back because at least one of the firearms was in her name to begin with. Fine. Then give the rest of them back to her and keep the Smith & Wesson. Fine. But that's the question we're trying to pose to you is how is this not precluded by the fact that the Court of Appeal rendered a decision on exactly the same argument you're trying to put to us? Because it didn't render an opinion on Lori's guns. It rendered an opinion on community property guns. Well, at least one of which was Lori's to begin with. So exclude that gun. The rest of the firearms ---- You can't exclude that gun because it was in the case. You're telling us, well, let's disregard the fact the Court of Appeal didn't treat that gun differently. But it didn't treat the gun differently. And so it seems to me that the Court of Appeal decision can be taken to be a rejection of the argument you're posing to us. It may have been wrong, but we're not in the business of second-guessing a State court when it has rendered a decision. And I'm not talking about Rooker-Feldman there. It's just basic claim preclusion. The claim preclusion argument doesn't work, Your Honor, because the harm is different here. Well, how about issue preclusion? So as I read it, the State court decided this issue. She doesn't have a Second Amendment right even to her gun. And you don't agree. But why isn't that an issue that was decided, and thus we can't decide it again under issue preclusion doctrine? There would have been no way for her to necessarily even get to the U.S. Supreme Court because she would have had to go through the California Supreme Court first. And again, in the California Supreme Court, she has to show prejudice. And the DCA said she can't show prejudice until she complies with the administrative procedures. Well, there are two problems with that. One is she didn't get her gun. The second is the California Supreme Court doesn't hold veto rights over what goes to the U.S. Supreme Court. The U.S. Supreme Court takes lots of cases from lower courts and States. If the State Supreme Court declines review for whatever reason. So there's nothing that I can see that would have prevented you from petitioning the California Supreme Court, even if it declines review, then petitioning the U.S. Supreme Court for cert. None of that happened. Well, Your Honor, but the more efficient, even judicially efficient process was laid out by the 6th DCA. Follow the claims or the administrative procedures process that the State of California  The California Department of Justice Bureau of Firearms is not a plaintiff or not a defendant in this case because they followed the law. They checked Lori out. They said she could have the firearms back. They transmuted the firearms. They said she could have the firearms back. We followed what the 6th DCA told us to do. We went back to the City of San Jose. That is a new harm. That is a new claim. Her Second Amendment right is resurrected at that point because they are her guns. And she complied with what the Court of Appeal told her to do. Well, the Court of Appeal said that as it understood the Supreme Court's decisions in Heller and McDonald, there's not a Second Amendment right to claim any particular firearm. And apparently there's not a question in this case that your client can obtain firearms and can keep them in the household. She can't keep or get back this firearm. Whatever the merits of the distinction drawn by the Court of Appeal, it is a distinction that turns out to be relevant in this case, too. Yes, but the burden for that, Your Honor, falls on the city. If the city is going to say these are magic guns and she can't have them back because they're different than a gun she could go to the market to get, it's their burden to prove they haven't done that. You're just disagreeing with what the State court said. No, Your Honor. I am trying to do what the State court told us to do, and that is follow the administrative procedures for return of the firearms. That statute also contemplates further court action if the city doesn't comply. That's why there's an attorney's fees provision in that statute. So can I ask you a couple of questions about a different topic? On the Fourth Amendment claim, is there any indication in the record here or the materials we have about how long it would have taken the officers to get a warrant and whether they definitely could have done that before Lori's has been returned? Your Honor, several years ago I litigated an exigent circumstance firearms case, Fisher v. The City of San Jose, in which there was a finding that in exigent circumstances where there is an emergency, warrants could theoretically be waived. In this particular case, Mr. Rodriguez was already in the ambulance, was already on his way to the hospital. There was plenty of time for the officers to either get a warrant or perhaps present Lori with a consent form if they wanted to do that. They didn't have those forms. How do we know? I mean, so he was in an ambulance, but I don't know how far away the hospital is. I mean, how long would it have taken him to get released and get back compared to getting a warrant? Do we know? It turns out it was two weeks he was in the hospital, Your Honor. But did the officers know that was going to be the case? It's a 72-hour hold. 5150 statute is a 72-hour hold. And it was guaranteed to be a 72-hour hold from the time he was put in the ambulance? I don't know if it's guaranteed to be a 72-hour hold or not. Because he hadn't been evaluated yet at the time he was in the ambulance, right? That's true. So we don't know yet at that point whether it's 72 hours? That's what the statute calls for is a 72-hour hold. But is it based on a doctor's evaluation when he gets to the hospital or what is it based on? My experience in these kind of cases, Your Honor, is that it's sometimes based on a physician's assistant or an M.D. So they don't know at the point they're putting him in the ambulance whether he's going to come back in 15 minutes? That's true. So how do we know that the officers had time to get a warrant? Because we have telephone warrants available in the city of San Jose. Wait, I didn't understand what you just said. There are telephone warrants available in the city of San Jose for exactly these kind of circumstances. So you're saying in 15 minutes they could have called a magistrate judge or something? I don't know the exact timeline. That might be a question better directed to the city, Your Honor. Could you explain if you're seeking damages in this case, and if so, on what claims? The damages would be on all of the claims. The claims for actually having to bring the state suit if necessary. So I think in your opening brief to us you say you're only seeking injunctive and declaratory relief. But I had quite a hard time figuring out whether you were talking about all your claims or only some. But it seemed like you were saying you're only seeking injunctive and declaratory relief. Would you be seeking actual money damages for the value of the guns if they're ultimately forfeit, Your Honor? Well, they haven't been forfeited. The position was that your client had the opportunity to resell them through a licensed dealer. Well, actually, Your Honor, what happened in the state court was that she could sell the guns and then take the money and go back and rebuy them from the same dealer. That's what's such a nonsense, why this case is in court. But so she could have gotten money for them. She could have sold them. True. And still can. Still can. She just wants the ones. So are you seeking damages for anything? I mean, if that's the damages claim, it's not a very good one. Are you seeking damages for anything else? No. I'd like to reserve the rest of my time. Thank you. Thank you. Thank you. May it please the Court, Matthew Pritchard on behalf of the City of San Jose and the related city appellees. Your Honors, the issue in this case is actually quite a narrow one. The State Superior Court below issued an order of partial forfeiture of property belonging to Lori Rodriguez after finding in the 8102 proceeding there that it would pose a danger to Ms. Rodriguez, to her husband, and to the public generally to return that particular property to the Rodriguez household. Plaintiffs in this case, that's a conclusive finding. That finding of danger is conclusive in this proceeding, and plaintiffs don't challenge it here. The argument instead really comes down to the argument that the Constitution requires the City of San Jose, notwithstanding that conclusive finding, judicial finding of danger, to return the guns, the property, to her household. So is it your understanding? Oh, sorry. Go ahead. What does the record show as to the husband's ability to get into the locked safe? So the trial court, the State trial court made specific findings as to that. And this is in the record throughout the trial court's finding in the transcript where there's a colloquy between the trial court and counsel. The trial court's findings were, given the history of instability in that household because there had been several domestic disturbance calls, given the fact that Mr. Rodriguez was a very large man, he was 400 pounds, given the instability that he had exhibited on that night and on other occasions, that there was a high likelihood of danger that he would be able to independent of the fact that the weapons were already in his possession, in his control, they were in his safe. Did the record show that it was just a locked safe or was there evidence in the record that he had a key? So the evidence is that he had access to the key because the key was stored in a desk in an office that he had access to. There's one mild ambiguity in the record, so I want to be clear. It's not entirely clear. So the safe, incidentally I want to say all of this was part of the factual finding, it was considered by the trial court when the trial court found danger, so it's not something that I think at this juncture could be sort of second gainsaid. Having said that, the trial court found that so the guns were in a safe, the safe required both a key and a code to open the safe. Ms. Rodriguez certainly had access to the key and the code. She kept the keys locked in a desk. She kept the code also in the same desk in an office in the Rodriguez household. Mr. Rodriguez had access to the desk and to the office. There was never anything, it's not clear from the record whether he had a key to the actual desk where the keys were kept themselves, but he certainly had access to the address book where the codes were. But the district court took all of that, excuse me, the trial court, the state superior court took that all into consideration and decided that given the facts before him, there was a likelihood, certainly enough to meet the threshold that he was considering for danger purposes, there was a likelihood that Mr. Rodriguez would be able to get access to the firearms in the future and that's why that court found that return of the firearms to the Rodriguez household would pose a danger. So your position is that the woman had a second amendment right to the guns, but that's trumped by the access that her husband has to it, for which there is a ruling by the court that there's a high degree of, a high likelihood of damage that would take place because of his mental condition, et cetera. Not quite. I think it's in the nature of that. I don't believe that Laurie Rodriguez had a second amendment right to not have certain guns forfeited under a valid law. You won't even go that far. Okay. No, no. But regardless of her rights then, you feel they're trumped by, pardon the word trump, we're going through shutdowns now. Take it away. Very useful word. They're trumped by the determination by the trial court of a possible damage that could be caused by the husband because of his condition. Do I understand your position correctly there? In a sense, I'm also going to avoid the word trump for different reasons in that I don't think it actually is trumped. It just means that the second amendment is inapplicable. So when I say that the question here is narrow, the question is simply when there is a forfeiture order, and this is a partial forfeiture order. I agree with Your Honor, Judge Clifton, it's not a full forfeiture. She can still exercise some property-based rights over this insofar as she can have them transferred and sold. But it's a partial forfeiture of the right of possession to these specific firearms. Anytime the government acts according to a power, a valid enactment, a valid law, and it undertakes a forfeiture pursuant to that valid law, it doesn't become a second amendment case simply because the property forfeited happens to consist of guns any more than it would become a first amendment case if it happens to consist of rock albums, something that you have a first amendment right to listen to and to access and to possess. So it is here, Your Honor. This is a forfeiture order pursuant to a statute that plaintiffs don't even challenge as violative of any constitutional rights. Because it was a forfeiture order pursuant to a valid statute, the only inquiry there is whether there was a fundamental fairness accompanying the process, accompanying that forfeiture under the court's ordinary due process. Well, she is arguing that her second amendment rights have been violated. That her what? Second amendment rights have been violated. She's arguing that, sure. But that's a misplaced argument because the only basis for that argument is because the property that was forfeited pursuant to a valid statute consisted of guns, my second amendment right was violated. But that's not the inquiry, Your Honor. In every case where this Court has considered a second amendment question or undertaken any kind of second amendment analysis, it's been dealing, and this is true of all other circuits, too, that have been discussed in the briefing, it's dealing with cases where we have statutes that affect some sort of ban or limitation on the possession of firearms or maybe ammunition or something that's fundamentally related. It's a relevant distinction, but it also underscores a little bit the illogic of us even being here. I mean, if it's acknowledged that a plaintiff can acquire other firearms and can keep them in exactly the same place, at some point I start to wonder, why are we here? Why are we taking all this time? What is it that justifies the city's drawing a line between these 12 firearms and the universe of God knows how many millions of firearms that are available to be acquired? What justifies it, Your Honor, is the superior court's finding that return of these particular firearms under the circumstances present before the court that made that call would pose a danger to Rodriguez's and to the public at large. But is it any different from any of the other firearms that could be acquired and stored in the same place? I acknowledge that there is something of an oddity in the law, and it exists only by virtue of the legislature in this case and the state having acted somewhat incrementally to address a much broader complex problem of possession by guns by mentally ill people. What the legislator has determined is that within the sphere that it has acted here, that of dealing with people who encounter law enforcement in these disturbing mental health circumstances, what police are to do is to take those particular weapons and to take them from the person who is mentally disturbed to have a judicial proceeding in which a court will determine whether return of those weapons will create a danger. And if so, Well, do those 12 firearms – I understand the transitory situation, but we're not there anymore. Sure. Do those 12 firearms pose any greater danger than any other firearm would pose? So two responses. The first is what the question that Your Honor is posing is a question that was answered by the State trial court, and that is conclusive here. That court found this fact. Well, it said having those guns would be a danger, but it didn't say they're more dangerous than any other guns. True. But that's not an inquiry this court need reach, given that it would be a danger to return these particular firearms. That shows that it fell within the requirements of Section 8102. Again, they don't challenge that. So that particular part of your carve-out of the Second Amendment now has been decided, as you say, by the State court. Are you then indicating that under Rooker-Feldman we have to respect that? Under Rooker-Feldman and preclusion doctrine, which I'd like to address. If I can answer very briefly, though, the second part of Judge Hoofton. Oh, be my guest. Take care of my judge. Otherwise I'll never remember 20 seconds from now. The second answer, besides that the court found it, is that, of course, a Smith & Wesson is a Smith & Wesson, a Glock is a Glock. I know that if it's dangerous for the Rodriguez household to have the particular weapons here, it's probably also dangerous for them to possess any other guns that have the same capacity, presumably, as the ones that were forfeited. The reality is the law may get to that at some point. It may try to find a way to get to that, balancing the relevant interests. At this point it has not, but that doesn't, again, that it may be dangerous to have other weapons there doesn't mean that it is not dangerous to have these particular weapons in the household. And that was really what the superior court was struggling with and what the superior court made its determination based on. So there are Rooker-Feldman problems with this case, to be sure, Your Honor. I came in at a late juncture, and I appreciate the court's opportunity for the supplemental briefing on this question because, really, I think there's no question what this lawsuit is about from beginning to end. Plaintiffs in this case are seeking to undo what happened in the state courts. They're certainly seeking relief that would directly undo the relief that the state court here granted. So for Rooker-Feldman, as opposed to issue preclusion, I had a question about sort of how the state law operates here. When the city got the ruling under 8102 that it would be a danger to return these guns, does that prohibit the city from returning the guns or only allow the city to keep the guns? It prohibits them, Your Honor. It's an order that the city shall not return the guns. And where do we learn that? I didn't see anything that had that kind of mandatory language. So it's a bit of a circuitous. I think you have to take a slightly circuitous route. You look first. So the judgment itself that the superior court issued simply says the requested relief, the relief that the city requests, is granted. And that was to have the guns for now, right? Oh, no, no, it's not for now. That was a forfeiture. The city sought forfeiture of the weapons, a final forfeiture of the weapons, where they would not be returned to the Rodriguez household. So I think any time that relief is requested and the relief is granted, if the relief is an order of forfeiture, when the court says your relief is granted, the court is granting a forfeiture. But the city wasn't allowed to destroy the guns because she could sell them. So how do we know that you cannot give them back rather than you may not give them back? So I think that's going to have to follow just by inference from both the petition. By virtue of the nature of the relief requested, if you look also in the record at the actual trial court. So maybe I should have not cut you off. What exactly about the relief requested tells us that it was asking the court to – I mean the city was actually asking to have its hands tied? Well, I can't imagine a city ever asking to limit its discretion or authority. I don't know that our petition did here. The petition says the weapons should be forfeited. I don't think an order of forfeiture is subject to that sort of ambiguity, whether it's a mandatory or a precatory. I think that an order of forfeiture is a disposition of property that's final. The city giving these weapons back would be doing so notwithstanding the state court's decision that that would create a danger that would undermine the entire basis of the state court order. Well, it might conflict with an issue that was decided, but would it actually – like in order to – say we said she has a second amendment right, you've got to give these guns back. Would you have to go to the state court and ask them to lift their order or could you do that consistent with the state court order? I think not. I think that that would violate the state court's order. I grant that it's not. The state court doesn't have a definitive proclamation that the city shall not return these weapons. But to say that they're forfeited is a final disposition as to the property law status of these weapons. That would mean that Rodriguez no longer has a property law right, and for the city to return them notwithstanding the trial court's finding of danger, I think that that would be certainly defiant of the spirit, although I take Your Honor's point that it wouldn't be directly contradicting any of the words. It just seemed to me that maybe it's more of an issue preclusion issue than a Rooker issue because I don't quite understand – I've struggled with this a lot so I could be wrong, but I don't quite understand how anything the state court said really is mandatory. In addition to your Rooker-Feldman, are you also arguing issue preclusion? Well, claim preclusion, really. Issue preclusion is very clear on the Second Amendment case. The court had an extended colloquy. I won't revisit that. But claim preclusion is broader than issue preclusion. It would prevent all of the claims that the plaintiffs are bringing here because under California law and the primary right theory, the primary injury theory, whenever there is an injury that is the result of a particular state action, that injury gives rise to a unitary, in the words of California courts, a unitary cause of action. You have to raise every theory for relief from that injury in the one proceeding where you are given that opportunity. Here, the opportunity was in the 8102 proceeding. Rodriguez certainly had a full and fair opportunity to litigate every – Well, for 11 of the 12 firearms, there has been a factual change, which is that ownership has been transferred now to Lori in her own name. Your Honor, I'm happy to speak about that because that – there's some confusion, I think, about that. There has been no factual change as to any fact that was a predicate for any of the State court proceedings. No. The allegation is that this is fresh. The claim that was pursued there, at least as to the 11, is different because at that time the claim had to run through Edward's ownership. Edward no longer is the owner. Lori is. So the argument being made by plaintiffs is that the facts have changed sufficiently so that the claim preclusion that applied when Edward owned them wouldn't apply now because he's not the owner. Lori is. And that argument might work except that the basis for the finding in trial court had nothing to do with ownership. So that factual change would matter if ownership were the basis, again, I think, of the State trial court's decision. It wasn't. The court assumed that Lori owned – at least had a community property interest in all of the weapons and that maybe she had one that was registered to her alone. The court was well aware of that. It also had no reason to imagine that she hadn't already gone through the State 38350 – or, excuse me, 33850 proceedings or that she was otherwise ineligible in any way. That was all irrelevant because what mattered was those weapons were in the custody and possession of Rodriguez at the time of this disturbing mental health episode. And because of that, under 8102, the court had to make the determination whether return of them to the household, irrespective of ownership, would pose the danger that 8102 contemplates, and the court said it did. So you go beyond ownership. It's no right to the guns, whatever that right is. Absolutely. I would, Your Honor, because the forfeiture order is no right to possess the guns. The right still to transfer them, to sell them, which defeats due process and takings and a lot of other stuff just on its own. Right. But, yes, the forfeiture is a final forfeiture as to these particular weapons. Rodriguez may not possess them again. 33850, which is where it seems that much of this confusion is coming from, both as to the Rucker-Feldman arguments. It's also laced through all the due process and all the other claims, Your Honors. I want to be very clear, Judge Friedland, I think your questions were getting at this. 33850 doesn't create any entitlements at all. It creates only obligations on a person who wishes to retrieve a gun from the custody of law enforcement, regardless of how it came into their custody. And it can come into their custody a number of ways. It can be a TRO in a domestic violence situation, evidence that's seized in the case, but then the case expires, or just sometimes guns are turned into law enforcement because they're found on the street. In any of those circumstances, 33850 sets forth the process a person has to go through to get them back. It doesn't create an entitlement. It just says here are the hoops you've got to jump through no matter what. It seems like it creates an eligibility, and getting back to the questions about Rucker, I was wondering if now that she has that eligibility, if the city could decide we'll give her these guns. My position on that is the same. Again, acknowledging the sort of difficulty of understanding the mandatory versus precatory nature. Certainly, Your Honor, I think what is clear is eligibility never had anything to do with the 8102 determination. Danger did. It was assumed that she was eligible. It was assumed that she had a property law interest in all of these things. That was irrelevant because of the possession and custody and the danger that that court found. Could I ask you about the Fourth Amendment claim? Yes. Do you think there's anything that we can look at to figure out whether there was time to get a warrant? Not on this record. I would submit respectfully that I think even if there were ample time to get a warrant, that would make a difference. The Supreme Court Fourth Amendment case law is pretty clear that time to get a warrant doesn't mean that you have to get a warrant. If otherwise, the law wouldn't require it. But doesn't there need to be an exigency? And once he's taken away, what's the exigency? Two responses. One is I think, again, we're kind of venturing outside of what they challenged. Since they don't challenge Section 8102 as constitutionally infirm, that provision authorizes seizure of weapons without a warrant any time they're in the possession of a person who there's probable cause to believe has mental disturbance issues. But the state law can say whatever it wants, and that doesn't mean there isn't a Fourth Amendment claim for federal purposes. I certainly agree with that, but I do think that that is not something that they have raised. Kagan is so eager. Well, I think they've raised a Fourth Amendment. As I understand it, she says her Fourth Amendment rights were violated by this incident. And I think we have to figure out whether that's true, which I think depends in part on whether there was exigency that explained why the officers didn't get a warrant. Or maybe I'm missing something. So I don't want to hair-split. I think her argument is that it's a problem because she owned them, not because 8102 is invalid under the Fourth Amendment. But I'd like to defend 8102. But I don't think there's a facial challenge to 8102. I think there's just – I think she's saying the officers came in and took these guns without a warrant. That violates the Fourth Amendment. So what's wrong with that argument? 8102 authorized the seizure. But 8102 can't get you out of the Fourth Amendment, so how is it wrong under the Fourth Amendment? It's constitutional. I should just get to it. 8102 is constitutional. Okay, but she's not – I don't understand her to be challenging 80102 facially. So I think she's saying what the officers did here violated my rights because they didn't get a warrant. Right, so a warrantless seizure is authorized under the Fourth Amendment. The Supreme Court has made this clear. This Court has made this clear in Martin v. City of Oceanside emergency circumstances. It's somewhat distinct from exigency, and so I just want to be clear about that. It's more in the nature of the community caretaking exception to the Fourth Amendment requirement that Katie v. Zembrowski speaks to. And under that, when you have law enforcement undertaking a purpose that's unrelated to investigation or evidence collection, but instead is serving one of these law enforcement functions that Katie recognized law enforcement ought to undertake every day, this is, I think, a perfect example of where here law enforcement are serving or enforcing a law that is meant to preserve community safety and act in an emergency circumstance. But what's the emergency circumstance? I mean, once he's gone, he's in the ambulance. They're asking her now, okay, where are the guns and what's the combination? Why don't they get a warrant at that point? So I think the emergency circumstance, Your Honor, is that your questions began to get at this. There is no way for law enforcement officers to know at the time that they take someone, they detain someone under 5150 of the Welfare and Institutions Code how long they'll be. It can be minutes. It can be very brief. It can be that the person gets to the hospital, has completely calmed down, they're evaluated very rapidly, and then returned right home. I don't have an answer about how quickly law enforcement can get a warrant or whether San Jose has particular phone procedures, but I think that certainly the question whether law enforcement, it's reasonable for law enforcement without a warrant to seize firearms under circumstances where there's a serious mental health episode like this. And even though they're committing someone and that person will be transported to a hospital for some indeterminate amount of time, it's reasonable pursuant to the community caretaking exception for them to take possession of any weapons and the immediate possession of that person that would pose a danger. Was the defense of qualified immunity to Officer Valentine raised in the trial court? It was. The court didn't have occasion to address it since under the first prong of the two-prong inquiry for qualified immunity found no constitutional violation. We raised it, and I think it's a very clear bar. It sounds like they're not seeking damages anyway. It wasn't ruled upon by the trial court? The district court didn't explicitly address it since he found no constitutional violations in the first place, Your Honor. But we raised it. There are no damages, although I think that's also been somewhat unclear from the briefing, maybe nominal. Although today he said the only damages were the Second Amendment, the forfeiture of the guns, if they're actually not any kind of damages for Fourth Amendment or anything else. Yes, and if that's true, I think Your Honor's right. There are no damages at all because the full market value is recoverable through a sale that Rodriguez has the ability to control that sale, in fact, entirely. Thank you, counsel. Thank you, Your Honor. With regard to the damages, Your Honor, number one, we've never inspected the weapons. We don't know if they've been damaged while they've been stored, so it's possible that there is some money component once we get the firearms back. If Mr. Rodriguez was taken to the hospital and immediately released, I think that's a pretty good finding that there was nothing wrong with him, okay, to address your earlier question. I'd like to clear up a couple of confusion about some facts. To characterize what happened to the Rodriguez household as a domestic disturbance is just not true. There's ample evidence in the record that this was not a domestic disturbance or a domestic violence situation. I thought he was saying there were previous domestic disturbances. There were as a previous call for a mental health or welfare check on Mr. Rodriguez, so that is true. The claims preclusion by the city has been waived as far as I can tell. They did not file a counter appeal or a cross-claim in this appeal, and that issue was not addressed in the district court. So I don't know that claims preclusion is not jurisdictional, Your Honor.  Our Clements decision, though, says that there's reason to reach issue preclusion even if not claim preclusion. That's possible. Do you have a response to that? I don't have a response to that right now, Your Honor. I would like to address the specific order that the state court did issue. It's found in the excerpt of record at page 80 and 81. And skimming over the boilerplate language, it is hereby ordered that the city's petition for disposition of weapons is granted. The city agrees to hold the weapons pending final disposition or resolution of this matter in accordance with its general principles. I don't read that order to mean that the city can't give the guns back once Ms. Rodriguez complies with the administrative procedures that the district court of appeal told her to comply with. Also, there was some colloquy between Judge Wallace and the city on whether or not Mr. Rodriguez had access to the safe or the safe combination. Ms. Rodriguez changed the combination to the safe. She knew what that combination was. The key only unlocks the dial. The dial itself requires more than a million or a million or fewer combinations in order to open it. It meets the California law. It seems like the state court thought, though, regardless that he could force her to open the safe. That's how I understood the concern about the danger. That's no different, Your Honor, than Mr. Rodriguez walking into a sporting goods store and forcing somebody to give him a gun or walking next door to a neighbor and telling them to have the gun. There was some discussion here. The city wanted to talk about maybe the policy in the future will be that people who live with prohibited people can't have guns. That's not the policy. It can't be the policy under the Second Amendment, and the state of California already addressed that with its safe storage law than the law that was passed while this case was pending. When you live with a prohibited person, the proper way to deny them access is in a state-approved gun safe. That's what this case is about. Thank you. Thank you, both sides, for the helpful arguments. The case is submitted, and we are adjourned for the day. Thank you, Your Honor.
judges: Wallace, Clifton, Friedland